**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DILLON SIMS, individually and on behalf of
all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | 5:25-cv-1080 (ECC/MJK) |

v.

SYRACUSE HAULERS WASTE REMOVAL,
INC.,

Defendant.

---

Carter T. Hastings, Esq., *for Plaintiff*
Katherine S. McClung, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Dillon Sims, suing individually and on behalf of all others similarly situated, brings this action against Defendant Syracuse Haulers Waste Removal, Inc. alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., and the New York Labor Law. Dkt. No. 1. Presently before the Court is Plaintiff's motion for conditional certification and notice to putative collective members under the FLSA. Dkt. No. 36. The motion is fully briefed. Dkt. Nos. 41, 47, 48. For the following reasons, Plaintiff's motion is granted in part.

**I.     BACKGROUND**

Plaintiff filed an "Original Collective/Class Action Complaint" on August 12, 2025. Dkt. No. 1. Plaintiff alleges that Defendant is a "full-service solid waste company providing waste collection, recycling, and disposal services to commercial, industrial, and residential customers." *Id.* at ¶ 25. As relevant to this motion, Plaintiff alleges that he and other putative collective members employed by Defendant were subject to a "regular practice" by which Defendant would

"deduct a 30-minute meal-period from [their] wages for a meal break they did not receive." *Id.* at ¶ 6. This deduction resulted in Plaintiff and the putative collective members "working straight time hours and overtime hours for which they were [] not compensated" at the rates required by the FLSA. *Id.* at ¶ 47.

To date, thirteen individuals in addition to Plaintiff have consented to opt-in to a FLSA collective action. *See* Dkt. Nos. 5, 7, 8, 17, 31, 33, 39, 40, 54, 55, 56.

A.      **Plaintiff's Submissions**

In support of the motion to conditionally certify a FLSA collective, Plaintiff submitted declarations from himself and six other former and current employees of Defendant. The seven declarants worked for Defendant as "non-exempt Waste Disposal Driver[s]" and were paid by the hour. *See* Dkt. No. 36-2 ¶¶ 2-3 (Dillon Sims Decl.); Dkt. No. 36-3 ¶¶ 2-3 (Devon Thomason Decl.); Dkt. No. 36-4 ¶¶ 2-3 (Marc Snow Decl.); Dkt. No. 36-5 ¶¶ 2-3 (Nathaniel Jefferson Decl.); Dkt. No. 36-6 ¶¶ 2-3 (James Chappell Decl.); Dkt. No. 36-7 ¶¶ 2-3 (Mark Myers Decl.); Dkt. No. 36-8 ¶¶ 2-3 (Luke Given Decl.).[1] All declarants assert that they worked at Defendant's Syracuse, New York facility; Mr. Jefferson states that he also worked at Defendant's Rome, Dewitt, and Fayetteville facilities in New York. Dkt. Nos. 36-2–36-8 ¶ 2. Their duties "included the collection, transportation and disposal of waste for Syracuse Haulers and/or its clients in the Syracuse, New York area." Dkt. Nos. 36-2–36-8 ¶ 4.

According to declarants, Defendant "automatically deducted a thirty-minute meal period from [their] daily hours, even though [they] regularly worked through [their] meal period on [Defendant's] behalf." Dkt. Nos. 36-2–36-8 ¶ 7. They assert that Defendant "was aware" that they

---

[1] Mark Myers refers to himself as both a "Waste Disposal Residential Helper" and a "Waste Disposal Driver[]." Dkt. No. 36-7 ¶¶ 2-3, 9-10.

did not take their meal breaks because their weekly routes "were so time-consuming that [they] could not complete them and take an uninterrupted thirty-minute lunch break" and because Defendant had cameras in the trucks and tracked the vehicles' GPS signals. Dkt. Nos. 36-2–36-8 ¶¶ 10-12; *see also* Dkt. No. 36-3 ¶ 11 (Mr. Thomason declaring that the drivers used "two way radios" to let Defendant know when breaks were taken).

Plaintiff Sims asserts that, if he did not "fill in a lunch time" on his route sheets, his manager "Jessica" told him to "fix it and put a 30 minute lunch down," "regardless of whether" a meal break was actually taken. Dkt. No. 36-2 ¶ 11. Mr. Myers was "instructed by [his] supervisors Jessica Jakeway, and Crystal Hunter that [he] needed to write down a lunch time even if [he] didn't actually take a break." Dkt. No. 36-7 ¶ 11. Some of the drivers were told that "there was no way to reverse the break deduction when [they] asked to be paid for working through [the] break." Dkt. Nos. 36-3 ¶ 11; 36-6 ¶ 11; 36-7 ¶ 11.

These seven individuals also state that their "fellow drivers had the same routine . . . and either ate while working or did not take a meal break at all." Dkt. Nos. 36-2–36-8 ¶ 9. The co-workers talked "on a regular basis about this issue." *Id.*

**B.    Defendant's Submissions**

In opposition to Plaintiff's motion, Defendant submitted a number of declarations and exhibits which generally can be categorized as (1) evidence of Plaintiff's counsel's advertising attempts aimed at former and current employees of Defendant; (2) time data for Plaintiff, Mr. Myers, Mr. Snow, and Mr. Jefferson with computations regarding how often, and by how many minutes, these drivers returned earlier than the scheduled end time of their shifts; (3) declarations from various current employees; and (4) the collective bargaining agreement with the union through which Defendant's drivers are unionized. *See generally* Dkt. Nos. 41-1 through 41-15.

3

## II.     LEGAL STANDARD

Section 216(b) of the FLSA authorizes employees to bring so-called "collective" actions through which "employees seeking to recover under FLSA's substantive provisions may assert claims on behalf of other 'similarly situated' employees." *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010); *see* 29 U.S.C. § 216(b) (providing that an action "may be maintained" by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated"). Unlike with traditional class actions under Federal Rule of Civil Procedure 23, "plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment." *Myers*, 624 F.3d at 542 (citations omitted).

The Second Circuit has "endorsed" a two-step process for "certifying" FLSA collective actions. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). "At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Id.* (citing *Myers*, 624 F.2d at 555). At step two, after "additional factual development," the district court "determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Id.* The "action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

Plaintiff's motion for "conditional certification and notice to putative collective members" implicates step one of this process. The "certification" referred to here "is only the district court's exercise of the discretionary power, upheld in *Hoffman-La Roche* [*Inc. v. Sperling*, 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members." *Id.* at 555 n.10; *see also Glatt*, 811 F.3d at 540 (noting that a "conditionally certified FLSA collective does not acquire an independent legal status"). The named plaintiff must make "some showing that 'there are other

4

employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Myers*, 624 F.3d at 555 (citation omitted). The "'modest factual showing' cannot be satisfied by 'unsupported assertions'" but "should remain a low standard of proof because the purpose of this first stage is merely to demonstrate *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* Plaintiffs may satisfy this requirement "by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Davella v. Ellis Hosp., Inc.*, No. 1:20-cv-726 (MAD/ATB), 2023 WL 5367791, at *3 (N.D.N.Y. Aug. 21, 2023) (citation omitted).

In deciding a motion for conditional certification, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Robbins v. Premier Senior Living, LLC*, No. 5:21-cv-1164 (AMN/ML), 2023 WL 7181678, at *2 (N.D.N.Y. Apr. 26, 2023) (citation omitted). If the named plaintiffs and opt-in plaintiffs "share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (citation and internal quotation marks omitted).

## III.    DISCUSSION

### A.    Conditional FLSA Certification

As set forth below, the Court concludes that conditional certification of a collective under FLSA Section 216(b) is warranted, but with a scope greatly reduced from Plaintiff's initial request.

Plaintiff moved for conditional certification and notice to putative members of a collective defined as

> all hourly employees who worked for Syracuse Haulers Waste Removal, Inc., throughout the United States in the past three years through the present and who were subject to the automatic meal break deduction.

Dkt. No. 36 (bold formatting omitted).[2] After Defendant objected to the scope of this proposed collective, however, Plaintiff "clarifie[d]" that "he only seeks to send notice to those individuals working as Drivers and/or Helpers on a full-time basis." Dkt. No. 47 at 3 n.2.[3] The Court therefore limits its analysis in the first instance to whether Plaintiff has made a modest factual showing that he is similarly situated to full-time "Drivers and/or Helpers," rather than all hourly employees.

First, Plaintiff, who worked as a driver, has not met his burden of showing that he is similarly situated to "Helpers." With one exception, all the individuals who submitted declarations in support of Plaintiff's motion assert that they worked for Defendant as "Waste Disposal Drivers." Dkt. Nos. 36-2, 36-3, 36-4, 36-5, 36-6, 36-8. Mark Myers, in turn, refers to himself both as a "Waste Disposal Residential Helper" and a "Waste Disposal Driver[]." *See* Dkt. No. 36-7. Even assuming that Mr. Myers worked as a helper, nothing in Plaintiff's submissions explains what the helper position entails or otherwise alleges that helpers other than Mr. Myers were also "victims of a common policy or plan that violated the law." *Glatt*, 811 F.3d at 540; *see Tay v. N.Y. & Presbyterian Hosp.*, No. 22-cv-8379, 2024 WL 4286226, at *16 (S.D.N.Y. Sept. 24, 2024) (limiting scope of collective to certain specified positions where there was "no showing that *all* hourly workers employed by Defendant are similarly situated") (internal quotation marks and citation omitted).

As a second threshold matter, Plaintiff has not made the modest factual showing required to certify a "companywide" or "nationwide" collective. Again with one exception, the declarants supporting Plaintiff's motion assert that they worked at Defendant's Syracuse, New York facility.

---

[2] Plaintiff's memorandum of law defines the putative collective slightly differently. *See* Dkt. No. 36-1 at 12.

[3] Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

Dkt. Nos. 36-2, 36-3, 36-4, 36-6, 36-7, 36-8. These declarants do not offer any evidence as to any other of Defendant's facilities. The one exception, Nathaniel Jefferson, states that he worked at Defendant's Syracuse, Rome, Dewitt, and Fayetteville facilities from August 2021 until January 2022. Dkt. No. 36-5 ¶ 2. But Mr. Jefferson did not work for Defendant within the statutory period and therefore cannot offer evidence about policies at these facilities during the relevant time period.[4] Accordingly, any conditionally certified collective will be limited to Defendant's Syracuse, New York facility. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 457-58 (E.D.N.Y. 2014) (limiting conditional certification to two store locations and declining to include all employees in New York where declarant's "general assertions that it was routine for [employees] to work off-the-clock 'in every store' [wer]e too conclusory . . . absent factual details of which stores he is referring to and the basis for his knowledge"); *Anjum v. J.C. Penney Co.*, No. 13-cv-460, 2015 WL 3603973, at *8-9 (E.D.N.Y. June 5, 2015) (limiting scope of collective to employees at two retail locations where plaintiffs did not demonstrate they were similarly situated to sales associates who worked at all retail stores in New York).[5]

So limited, the Court concludes that Plaintiff has made the modest factual showing necessary to demonstrate that Plaintiff and other potential plaintiffs who worked full-time as drivers at Defendant's Syracuse facility were "victims of a common policy or plan that violated

---

[4] The Court also notes that, after briefing on Plaintiff's motion was complete, Mr. Jefferson withdrew his consent form to opt-in to this FLSA action. *See* Dkt. Nos. 55, 56.

[5] Plaintiff argues in reply that his motion "provides sufficient evidence that [Defendant's] auto-deduction policy for meal-periods has been improperly applied at *all* locations," without citing to any evidence or even identifying what or where those locations are. Dkt. No. 47 at 3. Furthermore, Plaintiff's filings inconsistently describe the geographic area in which he claims Defendant operates. *See* Dkt. No. 1 ¶ 25 (alleging that Defendant provides services "throughout the United States"); Dkt. No. 36-1 at 3 (stating that Defendant operates "across the northeastern United States" and citing in support a hyperlink to a nonexistent webpage); Dkt. No. 47 at 3 n.3 (changing request from "nation-wide" to "company-wide" on the basis that Defendant "has no[t] certified that it has no facilities/employees outside of New York").

the law." *Glatt*, 811 F.3d at 540. Although "an automatic meal deduction, alone, is not 'a common violation of law' sufficient to 'bind the purported collective action,'" a modest factual showing that employees were "routinely working through or during scheduled meal breaks, without compensation, and with [the employer's] knowledge" is sufficient. *See Tay*, 2024 WL 4286226, at *11 (brackets and citations omitted).

Here, Plaintiff and six other drivers all assert that Defendant automatically deducted a thirty-minute meal period from their daily hours, that they regularly worked through their meal breaks, and that Defendant knew that its drivers routinely did not take meal breaks. *See* Dkt. Nos. 36-2–36-8 ¶¶ 7-13. Plaintiff further declares that his manager "Jessica" told him he had to put a lunch break on his time "regardless of whether" he took one. Dkt. No. 36-2 ¶ 11; *see also* Dkt. No. 36-7 ¶ 11 (Mr. Myers asserting that two named supervisors said he "needed to write down a lunch time even if [he] didn't actually take a break"). These drivers also state that their fellow drivers had the same routine and issue with meal breaks and that the drivers "talked to [their] fellow co-workers on a regular basis about this issue." *E.g.*, Dkt. No. 36-2 ¶ 9.

Defendant raises several arguments against conditional certification and submits a number of declarations and exhibits in opposition. For example, Defendant relies on the declarations of current employees who assert that drivers were not required to complete their routes by a certain time and therefore had time to take meal breaks, and on time records showing that Plaintiff and three other declarants regularly returned from their routes prior to their estimated end times. *See* Dkt. No. 41 at 13-14. Defendant also argues that the drivers were unionized and entitled to time-and-a-half pay for all overtime work but that none of the drivers submitted a grievance through the union, and notes that the supervisors named in Plaintiff's declarations deny having conversations with the drivers about meal breaks. *Id.* at 15-16. But in resolving Plaintiff's motion, the Court may

not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Robbins*, 2023 WL 7181678, at *2. The "question at this stage is whether the collective individuals are similarly situated, rather than the merits of the claims." *Davella*, 2023 WL 5367791, at *5 (internal citation omitted). The Court therefore finds that Defendant's "competing evidence and arguments that go to the underlying merits" are not appropriate considerations at this stage and do not warrant denial of Plaintiff's motion. *See Robbins*, 2023 WL 7181678, at *5.

Finally, the Court must define the temporal scope of the conditionally certified collective. Plaintiff variously requests that notice be sent to qualifying employees who were employed by Defendant "in the past three years through the present," Dkt. No. 36 at 1, or "at any time from August 12, 2022, through the final disposition of this matter," Dkt. No. 36-1 at 12. However, as Defendant points out, the notice period "generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed." *Ritz v. Mike Rory Corp.*, No. 12-cv-367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013) (citation omitted); *see also* 29 U.S.C. § 256 (providing that an FLSA action "shall be considered to be commenced in the case of any individual claimant" who opts in to a collective action "on the subsequent date on which such written consent is filed in the court in which the action was commenced"). Accordingly, the notice being authorized here will be directed to potential opt-in plaintiffs who worked for Defendant during the three years preceding the date of this order.

Based on the foregoing, the Court conditionally certifies and will authorize notice to be sent to the collective consisting of:

> all full-time Drivers who worked for Syracuse Haulers Waste Removal, Inc. at its Syracuse, New York facility in the three years preceding the date of this Order and who were subject to the automatic meal break deduction.

9

As requested by Defendant, and not addressed by Plaintiff, this conditionally certified collective does not include any employees who never worked more than 36.5 hours in a workweek.

## B.    Court-Authorized Notice

Plaintiff requests that he be allowed to send a Court-authorized notice to potential collective members by U.S. mail, email, and text message, and that Defendant be required to post the notice at its work sites "in a conspicuous location near the time clock." Dkt. No. 36-1 at 10, 12. Plaintiff seeks to send the notice at the beginning of a sixty-day opt-in period and to send a reminder notice thirty days prior to the end of the opt-in period. Dkt. Nos. 36; 36-1 at 11, 12. Defendant objects to sending the notice by any manner other than regular mail and objects to the sending of a reminder notice. Dkt. No. 41 at 19-24.

### 1.    Method and Timing of Distribution

Plaintiff argues that dissemination of the notice by mail, email, *and* text message is justified by the "practical reality of modern communication," and indeed cites cases in which these multiple methods have been authorized. Dkt. No. 36-1 at 10-11; Dkt. No. 47 at 10-11. Defendant counters that Plaintiff "has not provided any explanation for why first class mail is not sufficient notice or why notice by e-mail or telephone numbers is necessary in this case." Dkt. No. 41 at 19-21. The Court agrees.

Some courts in this Circuit have expressed concern about email notice, because "electronic communication inherently has the potential to be copied and forwarded to other people . . . with commentary that could distort the notice approved by the Court." *Spack v. TransWorld Ent. Corp.*, No. 1:17-cv-1335 (TJM/CFH), 2019 WL 192344, at *14-15 (N.D.N.Y. Jan. 1, 2019) (citation omitted). Further, Plaintiff has made no showing that distribution by regular mail is likely to be

unsuccessful for a significant number of potential opt-in plaintiffs. *See id.* at *15. The Court thus finds that dissemination of the notice via email is not necessary at this stage.[6]

Sending a notice via text message is most commonly approved where the "nature of the employer's business facilitates a high turnover rate among employees." *Davella*, 2023 WL 5367791, at *8 (brackets and citation omitted). Courts have declined to approve text message notice "where the plaintiff fails to 'sufficiently demonstrate[] that turnover and relocation by potential members of the collective [would] render mailed notice ineffective." *Id.* (citation omitted); *see also Mikityuk v. Cision US Inc.*, No. 21-cv-510, 2021 WL 1750370, at *9 (S.D.N.Y. May 4, 2021) (declining to authorize text message notice where the plaintiffs made "no argument" that "turnover is such that text messaging is required or appropriate"). Here, Plaintiff has made no argument or showing that the nature of Defendant's business facilitates a high rate of turnover and relocation, and the Court therefore declines to authorize dissemination of the notice via text message.

Last, Plaintiff requests that Defendant be required to post the notice at its work sites in a "conspicuous location near the time clock." Dkt. No. 36-1 at 10. Defendant argues that Plaintiff has not justified the need for a workplace posting that would potentially cause "workplace disruption." Dkt. No. 41 at 22. Here, where there has been "no suggestion that there will be any problem reaching current employees through mail," where the collective has been limited to the position of driver only, and in recognition of the "potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law," the Court denies

---

[6] For similar reasons, the Court denies Plaintiff's request, raised in a footnote, that potential collective members be given the option to execute their consent forms online through an electronic signature service. Dkt. No. 36-1 at 10 n.5.

11

Plaintiff's request for a workplace notice. *See Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667-68 (S.D.N.Y. 2017).

Accordingly, Plaintiff may disseminate the notice to potential collective members via first-class mail. The Court approves of the requested sixty-day opt-in period. The Court further authorizes a reminder notice to be sent to potential collective members who have not yet returned a signed opt-in consent form in this case thirty days after notice is initially sent.

### 2.    Disclosure of Potential Collective Members' Information

Plaintiff requests that Defendant be ordered to provide "a list, in electronic and importable format, of the names, dates of employment, positions of employment, locations of employment, last-known mailing addresses, last-known cell phone numbers, and email addresses of all Putative Collective Members who worked for Syracuse Haulers during the Relevant Time Period." Dkt. No. 36-1 at 12. Defendant objects to the provision of all this information as unnecessary and private. *See* Dkt. No. 41 at 19-24.

Because the Court authorizes dissemination of the notice by mail, Defendant is directed to provide in electronic format the names and last-known mailing addresses of individuals falling within the scope of the conditionally certified collective. Plaintiff will know that the individuals identified worked as full-time drivers at Defendant's Syracuse facility. The Court declines to order Defendant to produce the remainder of the information requested at this time, as it is not necessary to contact the potential plaintiffs. *See Spack*, 2019 WL 192344, at *10 (noting that email addresses are generally not publicly available); *Iriarte v. Café 71, Inc.*, No. 15-cv-3217, 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015) (declining to order defendants to produce certain personal information and noting that the plaintiff "suggest[ed] no reason why he requires all this information in order to send § 216(b) notice").

12

### 3. Content of the Notice

Plaintiff submitted a proposed "Notice of Collective Action Lawsuit" and "Consent to Join Wage Claim Against Syracuse Haulers" form with his motion (Dkt. No. 36-9) to which Defendant raised numerous objections. In reply, Plaintiff states that he is "willing to adopt the Notice and Consent Form used in" *Rodney v. Casella Waste Systems, Inc.*, No. 2:21-cv-196, 2023 WL 313929 (D. Vt. Jan. 19, 2023). Dkt. No. 47 at 4. The parties have not provided the Court with the form used in *Rodney*.

In light of Plaintiff's apparent willingness to address Defendant's objections to the proposed notice, the parties are directed to meet and confer to attempt to reach agreement as to the form and content of a proposed notice. The parties are directed to submit the agreed-to proposal, or three-page letter briefs attaching their competing proposals if they are unable to agree, by May 27, 2026.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for conditional certification, Dkt. No. 36, is **GRANTED in part** as set forth in this Memorandum-Decision and Order; and it is further

**ORDERED** that the issuance of notice to the collective, once approved by the Court, is authorized, limited as set forth in this Memorandum-Decision and Order; and it is further

**ORDERED** that within twenty-one (21) days of this Decision, Defendant shall produce in electronic format the names and last known mailing addresses for all full-time drivers employed by Defendant from May 6, 2023 to the date of this Decision; and it is further

**ORDERED** that the parties meet and confer regarding the particular form and substance of the notice, consistent with this Decision, and submit the proposal, or three-page letter briefs attaching their competing proposals if the parties are unable to agree, by May 27, 2026.

**IT IS SO ORDERED.**

Dated: May 6, 2026

_____
Elizabeth C. Coombe
U.S. District Judge

14